**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

GRAYLING THOMAS,[1]

               Plaintiff,

     v.

GEORGIA DEPARTMENT OF
CORRECTIONS, et al.,

               Defendants.

CIVIL ACTION NO.: 6:18cv111

**<u>ORDER AND MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>**

Plaintiff, while presently incarcerated at Johnson State Prison in Wrightsville, Georgia,
brings this action under 42 U.S.C. § 1983 as a result of injuries sustained while incarcerated at
Smith State Prison in Glennville, Georgia.  Doc. 1.  After the requisite frivolity review under 28
U.S.C. § 1915A, I **RECOMMEND** the Court **DISMISS** all claims by Plaintiff against
Defendants Georgia Department of Corrections, Dozier, and Jane Doe.  I also **RECOMMEND**
the Court **DISMISS** Plaintiff's equal protection claims against Defendants Williams,[2] Lawrence,
Hudson, and Mobley.  I further **RECOMMEND** the Court **DISMISS** any claims for monetary
damages against Defendants in their official capacities and **DISMISS** all claims for monetary

---

[1]     The Court has docketed the case and referred to Plaintiff in its prior Orders as "Thomas
Grayling"; however, upon review of the Plaintiff's filings with the Court, it appears Plaintiff's name is
actually "Grayling Thomas."  Accordingly, the Court **DIRECTS** the Clerk to amend the docket so that it
properly refers to Plaintiff as "Grayling Thomas."  The caption in this Order reflects the corrected case
heading which is to be used in any subsequent filings in this case.

[2]     Plaintiff has named "Doug William" as a Defendant in this matter, describing him as the Warden
of Smith State Prison.  <u>See</u> Doc. 1.  The Court is aware of a Doug Williams, who has held the position of
Warden of Smith State Prison.  Accordingly, the Court will assume Plaintiff's reference to "Doug
William" was in error and will refer to this Defendant as "Defendant Williams" in this Order.

damages against Defendant Caldwell.  Finally, I **RECOMMEND** the Court **DENY** Plaintiff's requests for a temporary restraining order against Defendant John Doe and a permanent injunction against transfer back to Smith State Prison.  As to any dismissed claims, I **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal.

However, I **FIND** that Plaintiff's claims of retaliatory transfer against Defendants John Doe, Lawrence, Hudson, Mobley, and Williams may proceed.  I also **FIND** that Plaintiff's claims against Defendants Hudson and Williams for deliberate indifference to Plaintiff's medical needs may proceed, and I **FIND** that Plaintiff's claim for injunctive relief in the form of prospective medical care may proceed against Defendant Caldwell.  Further, I **FIND** that Plaintiff's claims of excessive force, battery, and racial discrimination against Defendant John Doe may proceed.  I hereby **DIRECT** a copy of Plaintiff's Complaint and attached exhibit, docs. 1, 1-1, and a copy of this Order to be served upon Defendants Caldwell, Lawrence, Hudson, Mobley, and Williams by the United States Marshal without prepayment of cost.

The Court further **ORDERS** Plaintiff to file a supplement to his Complaint within 75 days of the date of this Order, identifying the unnamed John Doe Defendant or providing enough descriptive information about that individual to make service possible.  Plaintiff's failure to do so may result in the dismissal of any claims against Defendant John Doe.

## BACKGROUND[3]

On the evening of March 26, 2018, Plaintiff was in a lockdown unit at Smith State Prison when an argument with racist overtones broke out between second shift Officer John Doe ("Defendant John Doe") and some inmates in a nearby cell.  Doc. 1 at 6.  Defendant John Doe,

---

[3]     During frivolity review under 28 U.S.C. § 1915A, "[t]he complaint's factual allegations must be accepted as true."  Waldman v. Conway, 871 F.3d 1283, 1289 (11th Cir. 2017).

who is white, was making rounds and yelled racist comments at cell 215 to the effect of, "I am not scared of you n******.  It's two you but one of me." <u>Id.</u>  Plaintiff alleges Defendant John Doe then entered Plaintiff's cell, # 213.  Plaintiff asked Defendant John Doe, "Man, why are you in my cell," and Defendant John Doe responded, "Your brothers want to talk shit.  Now they are going to see you get your ass kick [sic]." <u>Id.</u> at 6–7.  Defendant John Doe then proceeded to physically assault Plaintiff, hitting him repeatedly in the shoulder and on the back of the head with his radio. <u>Id.</u>  Plaintiff alleges that Defendant John Doe then called a Code 10/10, the code for inmate fighting. <u>Id.</u>

A prison Correctional Emergency Response Team ("CERT") team composed of Defendants Hudson, Lawrence, and Mobley responded to the code and took pictures of Plaintiff's shoulder and head.  Plaintiff alleges that, despite informing the CERT team he needed medical care, he never received any. <u>Id.</u>  Instead, Plaintiff was transferred to Johnson State Prison that same night.  Plaintiff alleges that before he was transferred, he wrote a statement about the assault and gave it to Defendant Hudson. <u>Id.</u>

Plaintiff's shoulder was bruised and swollen for days, and he claims he experienced vomiting, severe migraine headaches, nausea, and memory loss following the attack. <u>Id.</u> at 8.  Plaintiff states he was, at that time, scheduled to see a "head specialist" but had been denied other medical treatment. <u>Id.</u>  He describes his treatment as consisting of only heavy dosages of 800 mg ibuprofen. <u>Id.</u>

Plaintiff seeks compensatory and punitive damages, a preliminary and permanent injunction against the Defendants, and a directive for immediate medical treatment. <u>Id.</u> at 17.

## STANDARD OF REVIEW

Plaintiff is bringing this action *in forma pauperis*.  Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets, shows an inability to pay the filing fee, and also includes a statement of the nature of the action which shows that he is entitled to redress.  Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous, malicious, or if it fails to state a claim upon which relief may be granted.  28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii).  Additionally, under 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity.  Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or which seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

The Court looks to the instructions for pleadings contained in the Federal Rules of Civil Procedure when reviewing a complaint on an application to proceed *in forma pauperis*.  See Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances).  Further, a claim is frivolous under § 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'"  Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010).  Under that standard, this Court

must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . ." (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003))). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

## DISCUSSION

## I.    Official Capacity Claims

Plaintiff has brought claims against each Defendant "individually and in his official capacity." Doc. 1 at 5. To the extent Plaintiff is seeking monetary damages from Defendants, Plaintiff cannot sustain a § 1983 claim against them in their official capacities. States are

immune from private suits pursuant to the Eleventh Amendment and traditional principles of state sovereignty. Alden v. Maine, 527 U.S. 706, 712–13 (1999). Section 1983 does not abrogate the well-established immunities of a state from suit without its consent. Will v. Mich. Dep't of State Police, 491 U.S. 58, 67 (1989). Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from a suit for monetary damages under § 1983. Id. at 71. Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as officers at a state penal institution. Accordingly, the Eleventh Amendment immunizes these actors from suit for monetary damages in their official capacities. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims for monetary damages against Defendants in their official capacities. Therefore, I **RECOMMEND** the Court **DISMISS** Plaintiff's § 1983 claims for monetary relief against Defendants in their official capacities.

## II.     Claim Against Georgia Department of Corrections

Plaintiff, while not attributing any constitutional violations or other causes of action to the Georgia Department of Corrections, has nonetheless named this entity as a Defendant in this lawsuit. See Doc. 1 at 3. Even if Plaintiff alleged a cognizable § 1983 claim against the Georgia Department of Corrections, such claim would ultimately fail. The immunity provisions of the Eleventh Amendment serve as a bar to § 1983 actions against the Georgia Department of Corrections. Stevens v. Gay, 864 F.2d 113, 115 (11th Cir. 1989) ("The Eleventh Amendment bars [a plaintiff's § 1983] action against the Georgia Department of Corrections . . . ."). This bar applies regardless of whether Plaintiff seeks money damages or prospective injunctive relief. Id. Accordingly, I **RECOMMEND** the Court **DISMISS** the Georgia Department of Corrections from this action.

### III.     Claim Against Defendant Jane Doe

Plaintiff has named a Jane Doe Defendant in this case, whom he describes as the "nurse who plaintiff initially saw upon his arrival at Johnson State" and who was "responsible for screening and examining inmates during the intake process." Doc. 1 at 4. Plaintiff, however, makes no other mention of Defendant Jane Doe in his Complaint and fails to attribute any constitutional violations or other causes of actions to this unnamed nurse. See generally Doc. 1; see also Anderson v. Fulton Cty. Gov't, 485 F. App'x 394, 396 (11th Cir. 2012) (dismissal proper where complaint did not describe any specific allegations against defendant). As Plaintiff has failed to state a claim against Defendant Jane Doe, I **RECOMMEND** the Court **DISMISS** Defendant Jane Doe from this action.

### IV.     Eighth Amendment Claim of Excessive Force Against Defendant John Doe

Plaintiff alleges Defendant John Doe used excessive force in violation of the Eighth Amendment. Doc. 1 at 11. In Hudson v. McMillian, the United States Supreme Court recognized the "settled rule that the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." 503 U.S. 1, 5 (1992) (citations and quotations omitted). When prison officials are accused of using excessive force, "[t]he 'core judicial inquiry,' [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (quoting Hudson, 503 U.S. at 7). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

"In determining whether malicious and sadistic intent existed, a variety of factors are considered including: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and

any efforts made to temper the severity of a forceful response." <u>McReynolds v. Ala. Dep't of Youth Servs.</u>, 204 F. App'x 819, 822 (11th Cir. 2006) (citations and quotations omitted).

Plaintiff states he was in his cell on a lockdown unit at the time of the incident and did nothing to provoke the attack by Defendant John Doe other than to inquire why Defendant John Doe had entered his cell.  Doc. 1 at 6, 11.  Further, Plaintiff indicates the attack was initiated by Defendant John Doe solely to further a dispute between Defendant John Doe and some inmates in a nearby cell.  <u>Id.</u> at 6-7.  Plaintiff claims he sustained injuries to his head and shoulder during the attack and also suffered from vomiting, severe migraine headaches, nausea, and memory loss following the attack.  <u>Id.</u>  at 7-8.

The Court, accepting these allegations as true for the purpose of screening Plaintiff's Complaint, determines Plaintiff's Eighth Amendment claim of excessive force against Defendant John Doe is not due to be dismissed.

## V.      Battery Claim Against Defendant John Doe

In addition to his excessive force claim, Plaintiff has asserted a state law claim of battery against Defendant John Doe as a result of the March 26, 2018 attack.  Doc. 1 at 12.  Under 28 U.S.C. § 1367, district courts with original jurisdiction may exercise supplemental jurisdiction over all related claims that arise from the same "common nucleus of operative fact."  <u>City of Chicago v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 164–65 (1997).  When exercising supplemental jurisdiction over state law claims, a district court should apply federal procedural law and state substantive law.  <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938); <u>McDowell v. Brown</u>, 392 F.3d 1283, 1294 (11th Cir. 2004).

Under Georgia substantive law, a battery is an unlawful touching, typically the result of anger, rudeness, or lust, that would be offensive to a reasonable person.  <u>See</u> <u>Ellison v. Burger</u>

8

King Corp., 670 S.E.2d 469, 472 (Ga. 2008).  Georgia's courts have repeatedly held in battery cases that the unwanted touching itself constitutes the injury to the plaintiff.  See Vasquez v. Smith, 576 S.E.2d 59, 61 (Ga. 2003).  Accordingly, the Court finds Plaintiff has adequately alleged a non-frivolous Georgia battery claim against Defendant John Doe that arises from the same nucleus of operative facts as his federal claim of excessive force.

## VI.     Eighth Amendment Claims of Deliberate Indifference to Medical Needs Against Defendants Hudson, Williams, and Caldwell

Plaintiff alleges Defendants Hudson, Williams, and Caldwell were deliberately indifferent to his medical needs.  See Doc. 1 at 12–13.  Specifically, Plaintiff alleges Defendant Hudson, a member of the prison CERT team, failed to provide him with medical care following the attack, despite Plaintiff's requests for treatment.  Id. at 12.  Plaintiff alleges Defendant Williams, the Warden of Smith State Prison, approved Plaintiff's transfer to Johnson State Prison almost immediately after the attack without first providing Plaintiff with medical treatment.  Id. at 13.  As to Defendant Caldwell, Plaintiff only makes a general allegation of "deliberate indifference to Plaintiff's injur[ies]/medical needs after being attacked . . . ."  Id.  However, Plaintiff has also sought prospective injunctive relief in the form of medical treatment.  Id. at 17.

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A prisoner can state a valid claim under the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care . . . ."  Id. at 104–05.  "However, not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotation and citation omitted).  To prevail on his claim of deliberate indifference, a plaintiff must show: (1) a serious medical need; (2) deliberate

indifference to that need on the part of the defendant; and (3) causation.  See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Farrow, 320 F.3d at 1243 (citation and quotation omitted).  According to Plaintiff, he was hit "repeatedly in the shoulder and in the back of the head with [Defendant John Doe's] radio."  Doc. 1 at 7.  This injury of sustaining repeated hits to the head is arguably a "serious medical need."  As the Eleventh Circuit has stated, "[e]vidence of recent traumatic injury. . . has generally been sufficient to demonstrate a serious medical need."  Brown v. Hughes, 894 F.2d 1533, 1538 n.4 (11th Cir. 1990) (finding deliberate delay on order of hours in providing care for serious and painful broken foot sufficiently states constitutional claim); see also Murphy v. Walker, 51 F.3d 714, 719 (7th Cir. 1995) ("Any injury to the head unless obviously superficial should ordinarily be considered serious and merits attention until properly diagnosed as to severity.").

However, in order to establish deliberate indifference on the part of Defendants, Plaintiff must still show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence."  Goebert v. Lee County, 510 F.3d 1312, 1327 (11th Cir. 2007) (quotation and brackets omitted).  Using this standard, the Court will consider the claims asserted against Defendants Hudson, Williams, and Caldwell.

### A.    Defendant Hudson

Plaintiff claims the standard operating procedure required inmates to be seen by medical staff after an assault.  Doc. 1 at 9.  According to Plaintiff, Defendant Hudson, although

responding to the incident and taking pictures of Plaintiff's head, did nothing to assist Plaintiff in getting medical care.  Id. at 7, 12.

While it appears Plaintiff was later seen by a nurse when he was transferred to Johnson State Prison, see id. at 4, this does not necessarily shield Defendant Hudson from liability.  In Brown v. Hughes, a similar situation arose when the defendant failed to provide the plaintiff with medical treatment for his broken foot, but the plaintiff was still able to get assistance from other officers who ultimately sent him to the hospital later that same day.  894 F.2d at 1538.  In that case, the Eleventh Circuit still found there was a genuine issue of material fact as to the issue of the defendant's deliberate indifference and noted that "an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference."  Id.; see also Alsobrook v. Alvarado, 477 F. App'x 710, 713 (11th Cir. 2012) ("[A]llegations of an unjustifiable delay of one hour and forty minutes in treating a continuously bleeding 'gash to the back of [plaintiff's] head, a cut under his right eye, a bloody nose, [and] a cut high on his forehead by the hairline' while his clothes were covered in blood and his face was swelling and bruising, were sufficient to plead deliberate indifference.").

In light of the foregoing, the Court determines Plaintiff's claim against Defendant Hudson for deliberate indifference to his medical needs survives its review under 28 U.S.C. § 1915A.

### B.    Defendant Williams

Plaintiff alleges Defendant Williams approved his transfer to Johnson State Prison almost immediately following the attack, without first providing Plaintiff with medical care.  Doc. 1 at 13.  As noted above, Plaintiff's attack consisted of being hit repeatedly in the head with a radio by a prison guard.  Id. at 6.  Defendant Williams's alleged action in transferring Plaintiff to

another prison in another part of the state, without first ensuring Plaintiff was provided with medical care for his injuries, arguably resulted in a delay in treatment of a traumatic injury. See Alsobrook, 477 F. App'x at 713. Accordingly, the Court finds Plaintiff's claim against Defendant Williams for deliberate indifference to his medical needs survives its review under 28 U.S.C. § 1915A.

**C.     Defendant Caldwell**

Plaintiff alleges Defendant Caldwell, the warden of Johnson State Prison—the facility where Plaintiff was transferred after the attack—was deliberately indifferent to his injuries and medical needs. Doc. 1 at 13. Plaintiff, however, fails to allege any facts that indicate Defendant Caldwell knew of or disregarded Plaintiff's condition. A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555.

Even giving Plaintiff's Complaint a very liberal construction, the Court fails to find any allegations that would state a claim for monetary damages against Defendant Caldwell based on deliberate indifference. As to any alleged indifference by Defendant Caldwell in the hours following the attack, the Court points out that Plaintiff was seen by a nurse during the intake process upon his arrival at Johnson State Prison. Doc. 1 at 4. As to any alleged indifference by Defendant Caldwell in the months following the attack, Plaintiff fails to allege any causal connection between the acts of Defendant Caldwell and Plaintiff's alleged lack of treatment.[4] It appears, at most, that Plaintiff is alleging liability against Defendant Caldwell on the basis of his position as a warden at Johnson State Prison.

---

[4]     Plaintiff complains that, in the months following his attack, despite putting in many sick call slips and filing medical grievances, he was only treated with ibuprofen. Doc. 1 at 8, 10.

"Section 1983 claims may not be brought against supervisory officials solely on the basis of vicarious liability or *respondeat superior*."  Averhart v. Warden, 590 F. App'x 873, 874 (11th Cir. 2014) (citing Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)).  Rather, "[a] supervisor can be held liable under § 1983 if he personally participates in the alleged constitutional violation or if a causal connection exists between his acts and the constitutional infirmity."  Id.  "The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so, or when his customs or policies result in deliberate indifference to constitutional rights."  Oliver v. Harden, 587 F. App'x 618, 620 (11th Cir. 2014).

Here, Plaintiff has failed to sufficiently allege deliberate indifference on the part of Defendant Caldwell so as to bring a damages action against Defendant Caldwell.  However, to the extent Plaintiff seeks prospective injunctive relief in the form of proper medical care, Plaintiff may have a claim against Defendant Caldwell.  In Luckey v. Harris, 860 F.2d 1012, 1015–16 (11th Cir. 1988), the Eleventh Circuit articulated the scope of the Ex Parte Young exception to the Eleventh Amendment.  Luckey, 860 F.2d at 1015–16 (citing Ex Parte Young, 209 U.S. 123, 157 (1908)).  Specifically, the court explained:

> Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity.  All that is required is that the official be responsible for the challenged action.  As the Young court held, it is sufficient that the state officer sued must, 'by virtue of his office, ha[ve] some connection' with the unconstitutional act or conduct complained of.  [W]hether [this connection] arises out of general law, or is specially created by the act itself, is not material so long as it exists.

Id.

Given the nature of Plaintiff's injuries, which include memory loss and bad migraine headaches, see Doc. 1 at 8, and the failure of prison staff to provide him with any care other than

heavy dosage ibuprofen despite his many notifications to prison staff concerning his condition, see id. at 8–10, Plaintiff may be entitled to injunctive relief if he can prove his contentions.[5]  As Defendant Caldwell is the warden at Plaintiff's current facility, he would be suable in his official capacity for Plaintiff's claims for injunctive relief in the form of prospective medical treatment for his injuries.

Accordingly, I **RECOMMEND** the Court **DISMISS** any claims by Plaintiff against Defendant Caldwell for monetary damages; however, the claims against Defendants Hudson and Williams for deliberate indifference to Plaintiff's medical needs may proceed, and a claim against Defendant Caldwell in his official capacity for injunctive relief in the form of future medical care may proceed.

## VII.   Equal Protection Claims Against Defendants Dozier, Williams, Lawrence, Hudson, and Mobley

Plaintiff alleges Defendants Commissioner Dozier, Warden Williams, and CERT Team members Lawrence, Hudson, and Mobley failed to provide Plaintiff with equal protection of the law when they failed to prevent Plaintiff from being attacked by Defendant John Doe.  Doc. 1 at 13.

"To establish an equal protection claim, 'a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and [that] (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.'"  Muhammad v. Sapp, 388 F. App'x 892, 899 (11th Cir. 2010) (citations omitted) (noting that discrimination must be intentional).  "[T]he Equal

---

[5]      In his Complaint, Plaintiff states he is "presently scheduled to see a head specialist."  Doc. 1 at 8. It is possible the treatment issues have been resolved since the time of the filing of the Complaint; however, based on Plaintiff's allegations concerning the status of the treatment at the time of the Complaint, the claim for injunctive relief will be allowed to proceed.  The Court acknowledges discovery may reveal this claim is now moot.

Protection Clause requires government entities to treat similarly situated people alike."
Campbell v. Rainbow City, 434 F.3d 1306, 1313 (11th Cir. 2006).

In this case, Plaintiff fails to specify how Defendants Dozier, Williams, Lawrence, Hudson, and Mobley treated him differently from other similarly situated prisoners. There is no allegation that these Defendants were aware that Defendant John Doe would attack Plaintiff, and thus, it does not follow that their alleged failure to keep him "free from being attacked" violated Plaintiff's right to equal protection. As such, Plaintiff's claims against these Defendants do not state a claim under the Equal Protection Clause, and I **RECOMMEND** the Court **DISMISS** these claims.

## VIII.   Retaliatory Transfer Claim Against Defendants John Doe, Lawrence, Hudson, Mobley, and Williams

Plaintiff claims his transfer from Smith State Prison to Johnson State Prison was done with the intent to punish, harass, and retaliate against him for attempting to exercise his First Amendment rights. Doc. 1 at 14. The law provides that "[p]rison officials may not retaliate against inmates for filing lawsuits or administrative grievances. While an inmate does not have a constitutionally protected liberty interest against being transferred to a less agreeable prison, prison officials may not transfer an inmate in retaliation for exercising his right to file grievances against prison officials." Williams v. Brown, 347 F. App'x 429, 435 (11th Cir. 2009) (citations omitted). A retaliatory transfer violates a prisoner's First Amendment rights. Id.

In the present case, Plaintiff alleges he was transferred out of Smith State Prison within hours of informing prison officials he intended to file suit and grievances based on the alleged attack. See Doc. 1 at 7, 14. Specifically, Plaintiff alleges that, upon informing Defendants John Doe, Lawrence, Hudson, and Mobley of his plans to file a suit and a grievance, they told him he would not "be around long enough." Id. at 14. Hours later, Defendant Williams approved

Plaintiff's transfer to Johnson State Prison.  Id. at 13.  In reviewing these allegations, the Court determines that Plaintiff's First Amendment claims of retaliatory transfer against Defendants John Doe, Lawrence, Hudson, Mobley and Williams survive the Court's screening under 28 U.S.C. § 1915A.

## IX.   Racial Discrimination Claim Against John Doe

Plaintiff has alleged a claim of racial discrimination under the Fourteenth Amendment against Defendant John Doe.  See Doc. 1 at 15.  The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "Under the Equal Protection Clause, prisoners have a right to be free from racial discrimination."  Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995) (citations omitted).  "[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact. . . .  Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."  Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264–265 (1977).  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979) (footnote and citation omitted).  Courts have "consistently recognized that an infringement upon the constitutional right of inmates to be free from racial discrimination requires the scrutiny of federal courts."  Henry v. Van Cleve, 469 F.2d 687, 687 (5th Cir. 1972).

In the present case, Plaintiff alleges Defendant John Doe yelled racist comments and then, without provocation, entered Plaintiff's cell and proceeded to beat him.  Doc. 1 at 6, 7, 15.

In particular, prior to the alleged beating, Defendant John Doe is alleged to have said, "Your brothers want to talk shit.  Now they are going to see you get your ass kick [sic,]" "I'm not scared of you n*******," and "I'll show you n***** 'cause you'll in the cell by yourself without your black brothers."  Id. at 7, 15.  In reviewing these allegations, the Court finds Plaintiff has sufficiently stated a claim of race discrimination against Defendant John Doe under the Fourteenth Amendment so as to survive screening pursuant to § 1915A.  See, e.g., Cole v. Fischer, 379 F. App'x 40, 43 (2d Cir. 2010) ("When the verbal harassment and simultaneous physical abuse alleged in the amended complaint are considered together, we have little trouble concluding that plaintiff's allegations were sufficient to state a § 1983 claim for discrimination on the basis of race . . . .").

## X.     Temporary Restraining Order/Permanent Injunction

As a final matter, Plaintiff seeks a permanent injunction "to never be transferred back to Smith State Prison" and a temporary restraining order with respect to Defendant John Doe.  Doc. 1 at 15.  To be entitled to a temporary restraining order ("TRO") or preliminary injunction, a plaintiff must demonstrate:

> (a) there is a substantial likelihood of success on the merits; (b) the TRO or preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant; and (d) the TRO or preliminary injunction would not be averse to the public interest.

Parker v. State Bd. of Pardons & Paroles, 275 F.3d 1032, 1034–35 (11th Cir. 2001).

Similarly, a plaintiff requesting a permanent injunction must demonstrate:

> 1) [he] has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008).  "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to all four elements."  Horton v. City of St. Augustine, 272 F.3d 1318, 1326 (11th Cir. 2001) (citation and quotations omitted); see also Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 165 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.")

Further, in a civil action concerning prison conditions, "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."  18 U.S.C. § 3626(a)(2).  Likewise, prospective relief in a prison conditions case must be "narrowly drawn, exten[d] no further than necessary to correct the violation of the Federal right, and [be] the least intrusive means necessary to correct the violation of the Federal right."  Id., § 3626(a)(1)(A).

In this case, Plaintiff has acknowledged he is no longer incarcerated at Smith State Prison.  Doc. 1 at 3.  As such, a temporary restraining order against Defendant John Doe is not necessary, as there is no allegation that Defendant John Doe currently poses a threat of harm to Plaintiff.  See Robbins v. Robertson, No. 16-16021, 2019 WL 3302229, at *3 (11th Cir. July 23, 2019 ("'The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief' even when 'there is no assurance that he will not be returned to the jail.'").  Further, "inmates usually possess no constitutional right to be housed at one prison over another."  Barfield v. Brierton, 883 F.2d 923, 936 (11th Cir. 1989).  In this case, there is no indication Plaintiff is likely to be transferred back to Smith State Prison, and Plaintiff's fear of being subjected to another attack by Defendant John Doe is at this point too

remote and speculative to warrant injunctive relief.  See Ne. Fla. Chapter of Ass'n of Gen.

Contractors of Am. v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) ("The injury

must be 'neither remote nor speculative, but actual and imminent.'").  As such, I

**RECOMMEND** the Court **DENY** Plaintiff's requests for a temporary restraining order against

Defendant John Doe and a permanent injunction against transfer back to Smith State Prison.

## XI.     Leave to Appeal *in Forma Pauperis*

If the Court adopts this recommendation, the Court should also deny Plaintiff leave to

appeal *in forma pauperis* as to any dismissed claims.[6]  Though Plaintiff has not yet filed a notice

of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed.

R. App. P. 24(a)(3) (trial court may certify that appeal is not taken in good faith "before or after

the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is

not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this

context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687,

691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a

frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim

or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v.

Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not

brought in good faith if it is "without arguable merit either in law or fact."  Napier v. Preslicka,

314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085,

403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[6]       A certificate of appealability is not required in this § 1983 action.

Based on the above analysis of Plaintiff's action, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal as to any dismissed claims.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** the Court **DISMISS** all claims by Plaintiff against Defendants Georgia Department of Corrections, Dozier, and Jane Doe. I also **RECOMMEND** the Court **DISMISS** Plaintiff's equal protection claims against Defendants Williams, Lawrence, Hudson, and Mobley. I further **RECOMMEND** the Court **DISMISS** any claims for monetary damages against Defendants in their official capacities and **DISMISS** all claims for monetary damages against Defendant Caldwell. Finally, I **RECOMMEND** the Court **DENY** Plaintiff's requests for a temporary restraining order against Defendant John Doe and a permanent injunction against transfer back to Smith State Prison. As to any dismissed claims, I **RECOMMEND** the Court **DENY** Plaintiff *in forma pauperis* status on appeal.

However, I **FIND** that Plaintiff's claims of retaliatory transfer against Defendants John Doe, Lawrence, Hudson, Mobley, and Williams may proceed. I also **FIND** that Plaintiff's claims against Defendants Hudson and Williams for deliberate indifference to Plaintiff's medical needs may proceed, and I **FIND** that Plaintiff's claim for injunctive relief in the form of prospective medical care may proceed against Defendant Caldwell. Further, I **FIND** that Plaintiff's claims of excessive force, battery, and racial discrimination against Defendant John Doe may proceed.

**I HEREBY DIRECT** a copy of Plaintiff's Complaint and attached exhibit, docs. 1, 1-1, and a copy of this Order to be served upon Defendants Caldwell, Lawrence, Hudson, Mobley, and Williams by the United States Marshal without prepayment of cost.

The Court further **ORDERS** Plaintiff to file a supplement to his Complaint within 75 days of the date of this Order, identifying the unnamed John Doe Defendant or providing enough descriptive information about that individual to make service possible.[7]  Plaintiff's failure to do so may result in the dismissal of any claims against Defendant John Doe.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within 14 days of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Furthermore, it is not necessary for a party to repeat legal arguments in objections.  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; see Symonette v. V.A. Leasing Corp., 648 F. App'x 787, 790 (11th Cir. 2016); Mitchell v. United States, 612 F. App'x 542, 545 (11th Cir. 2015).

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A

---

[7]     Plaintiff may use appropriate discovery devices (such as interrogatories or requests for production of documents) to identify the correct name of Defendant John Doe.  Plaintiff is advised that, without Defendant John Doe's correct name, the United States Marshal will be unable to serve this Defendant.

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

## INSTRUCTIONS TO DEFENDANTS

Because Plaintiff is proceeding *in forma pauperis*, the undersigned directs that service be effected by the United States Marshal.  Fed. R. Civ. P. 4(c)(3).  In most cases, the marshal will first mail a copy of the complaint to defendants by first-class mail and request that defendants waive formal service of summons.  Fed. R. Civ. P. 4(d); Local R. 4.7.  Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  Generally, a defendant who timely returns the waiver is not required to answer the complaint until 60 days after the date that the marshal sent the request for waiver.  Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of Plaintiff upon oral examination.  Fed. R. Civ. P. 30(a)(2).  Defendants are further advised that the Court's standard 140-day discovery period will commence upon the filing of the last answer.  Local R. 26.1.  Defendants shall ensure that all discovery, including Plaintiff's deposition and any other depositions in the case, is completed within that discovery period.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30.  As Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within 10 days

of the notice of deposition, written questions Plaintiff wishes to propound to the witness, if any.

Defendants shall present such questions to the witness seriatim during the deposition.  Fed. R.

Civ. P. 30(c).

## INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if

appearance has been entered by counsel, upon their attorney, a copy of every further pleading or

other document submitted for consideration by the Court.  Plaintiff shall include with the original

paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct

copy of any document was mailed to Defendants or their counsel.  Fed. R. Civ. P. 5.  "Every

pleading shall contain a caption setting forth the name of the court, the title of the action, [and]

the file number."  Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of **immediately** informing this Court and

defense counsel of any change of address during the pendency of this action.  Local R. 11.1.

Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this

case.

Plaintiff has the responsibility for pursuing this case.  For example, if Plaintiff wishes to

obtain facts and information about the case from Defendants, Plaintiff must initiate discovery.

See generally Fed. R. Civ. P. 26 et seq.  The discovery period in this case will expire 140 days

after the filing of the last answer.  Local R. 26.1.  Plaintiff does not need the permission of the

Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within

this time period.  Id.  Discovery materials should **not** be filed routinely with the Clerk of Court;

exceptions include: when the Court directs filing; when a party needs such materials in

connection with a motion or response, and then only to the extent necessary; and when needed for use at trial.  Local R. 26.4.

Interrogatories are a practical method of discovery for incarcerated persons.  See Fed. R. Civ. P. 33.  Interrogatories may be served only on a party to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not named as a defendant.  Interrogatories are not to contain more than 25 questions.  Fed. R. Civ. P. 33(a).  If Plaintiff wishes to propound more than 25 interrogatories to a party, Plaintiff must have permission of the Court.  If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorney for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Fed. R. Civ. P. 26(c), 37(a)(2)(A); Local R. 26.7.

Plaintiff has the responsibility for maintaining his own records of the case.  If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page.  **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution.  Fed. R. Civ. P. 41; Local R. 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which Defendants may initiate. Upon no less than five days' notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any

question which seeks information relevant to the subject matter of the pending action.  Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, <u>including dismissal of this case</u>.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is <u>required</u> to prepare and file his own version of the Proposed Pretrial Order.  A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### <u>ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT</u>

Defendants may choose to ask the Court to dismiss this action by filing a motion to dismiss, a motion for summary judgment, or both.  Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within 14 days of its service.  "Failure to respond shall indicate that there is no opposition to a motion."  Local R. 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion.  Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within 21 days after service of the motion.  Local R. 7.5, 56.1.  The failure to respond to such a motion shall indicate that there is no opposition to the motion.  Furthermore, each material fact set forth in Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  Should Defendants file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any

material fact in this case.  That burden cannot be carried by reliance on the conclusory

allegations contained within the complaint.  Should Defendants' motion for summary judgment

be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest

Defendants' statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth

specific facts showing that there is a genuine dispute for trial, any factual assertions made in

Defendants' affidavits will be accepted as true and summary judgment may be entered against

Plaintiff pursuant to Federal Rule of Civil Procedure 56.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 25th day of November,

2019.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA