IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| GRAYLING THOMAS,<br><br>      Plaintiff,<br><br>      v.<br><br>WARDEN DOUG WILLIAMS, et al.,<br><br>      Defendants. | CIVIL ACTION NO.: 6:18-cv-111 |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants Warden Doug Williams, Antione Caldwell, CERT Officer Hudson, and Sgt. Laurence's Motion for Summary Judgment, construed as a Motion to Dismiss.[1]  Doc. 41.  Plaintiff filed a Response, and Defendants filed a Reply.  Docs. 50, 51, 53.  For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' construed Motion to Dismiss and **DISMISS** Plaintiff's claims against Defendants Williams, Caldwell, Hudson, and Laurence for failure to exhaust available administrative remedies.  Additionally, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Lt.

---

[1] Defendants' Motion is docketed as a Motion for Summary Judgment; however, Defendants argue dismissal is appropriate because Plaintiff failed to exhaust his administrative remedies.  See Doc. 41.  Exhaustion of administrative remedies is a matter in abatement that generally does not address the merits of the case.  Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008); see also Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (The first step of Turner "is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").  Thus, the exhaustion defense "is not ordinarily the proper subject for a summary judgment" but instead "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." Id. at 1374–75.  Because the defendant must raise exhaustion in a motion to dismiss, failure to exhaust is treated as an unenumerated defense pursuant to Federal Rule of Civil Procedure 12(b).  Id. at 1375 (holding "exhaustion should be decided on a Rule 12(b) motion to dismiss" even though "motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b)").  For this reason, I construe this portion of Defendants' Motion for Summary Judgment as a Rule 12(b) motion to dismiss for failure to exhaust administrative remedies.

Mobley for failure to prosecute and failure to follow a Court Order.[2] Because I have recommended dismissal of all claims against all Defendants in this action, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

## PROCEDURAL HISTORY

Plaintiff, an inmate proceeding pro se, filed this suit against Defendants, asserting claims under 42 U.S.C. § 1983. Plaintiff's contentions relate to an alleged assault by Officer John Doe, after which Plaintiff was denied medical care and was then transferred to Johnson State Prison as retaliation. Doc. 1 at 6–7.

After conducting frivolity review, the Court dismissed Plaintiff's claims against former Defendants Georgia Department of Corrections, Dozier, and Jane Doe, Plaintiff's equal protection claims against Defendants Williams, Laurence, Hudson, and Mobley, any claims for monetary damages against Defendants in their official capacities, and all claims for monetary damages against Defendant Caldwell and denied Plaintiff's request for a temporary restraining

---

[2] A "district court can only dismiss an action on its own motion as long as the procedure employed is fair . . . . To employ fair procedure, a district court must generally provide the plaintiff with notice of its intent to dismiss or an opportunity to respond." Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011) (citations and internal quotations marks omitted). A magistrate judge's report and recommendation provides such notice and opportunity to respond. See Shivers v. Int'l Bhd. of Elec. Workers Local Union 349, 262 F. App'x 121, 125, 127 (11th Cir. 2008) (indicating a party has notice of a district court's intent to sua sponte grant summary judgment where a magistrate judge issues a report recommending the sua sponte granting of summary judgment); Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1296 (N.D. Ga. 2009) (noting report and recommendation served as notice claims would be sua sponte dismissed). This Report and Recommendation constitutes fair notice to Plaintiff his suit is due to be dismissed. As indicated below, Plaintiff will have the opportunity to present his objections to this finding, and the presiding district judge will review de novo properly submitted objections. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; see also Glover v. Williams, No. 1:12-CV-3562, 2012 WL 5930633, at *1 (N.D. Ga. Oct. 18, 2012) (explaining the magistrate judge's report and recommendation constituted adequate notice and petitioner's opportunity to file objections provided a reasonable opportunity to respond).

order against Defendant John Doe and a permanent injunction against transfer back to Smith State Prison.  Doc. 10.

However, Plaintiff was permitted to proceed on his retaliatory transfer claim against Defendants John Doe, Laurence, Hudson, Mobley , and Williams, his claims for deliberate difference to a serious medical needs against Defendants Hudson and Williams, and his claim for injunctive relief in the form of prospective medical care against Defendant Caldwell.  Id.  Additionally, Plaintiff was ordered to file a supplement to his Complaint identifying the unnamed John Doe Defendant or providing enough descriptive information about that individual to make service possible.  Doc. 7 at 2.  But Plaintiff failed to provide additional information identifying Defendant John Doe and did not supplement his Complaint.  The Court then dismissed Plaintiff's clams against Defendant John Doe for failure to follow a Court Order and failure to prosecute.  Doc. 37.

Defendant Lt. Mobley has not appeared in this case.  The United States Marshals Service initially sent a request for waiver of service to Defendant Mobley on November 27, 2018, with notations on December 9, 2019, and on January 28, 2020.  Doc. 11 at 2.  The waiver request was returned as unexecuted on January 28, 2020, and was filed on February 6, 2020.  Id.  The Marshals Service signed the return, dated January 28, 2020, with the notation: "Unexecuted-HR Smith State Prison states no such person ever employed at prison."  Id.  On February 12, 2021, the Court then directed the United States Marshals Service to personally serve Defendant Mobley and ordered Plaintiff to provide any information regarding Defendant Mobley's whereabouts or any additional, personally identifiable information for Defendant Mobley.  Doc. 40.  The Court warned Plaintiff his failure to provide additional information for the effectuation of service or to otherwise respond to that Order may result in dismissal of his claims

against Defendant Mobley.  Id. at 2.  Recently, the United States Marshals Service filed a process receipt and return, stating attempts to serve Defendant Mobley were unsuccessful due to insufficient personally identifiable information.  Doc. 54.  To date, Defendant Mobley has not appeared in his case and Plaintiff did not respond to the Court's February 21, 2021 Order, despite being ordered to do so.

Therefore, the following claims are currently pending in this action: (1) retaliatory transfer claim against Defendants Laurence, Hudson, Mobley (who has not been served), and Williams; (2) claims for deliberate difference to a serious medical needs against Defendants Hudson and Williams; and (3) claim for injunctive relief in the form of prospective medical care against Defendant Caldwell.  Doc. 7 at 2; Doc. 10.

## BACKGROUND

Plaintiff claims he was assaulted on March 26, 2018, by an unknown corrections officer (John Doe), who hit him with a radio, and rendered him unconscious.  Doc. 1 at 7; Doc. 41-16 at 9.  At the time of the alleged assault, Plaintiff was incarcerated at Smith State Prison.  Doc. 41-16 at 6; Doc. 50-1 at 3.  Plaintiff claims Defendants Mobley, Hudson, and Laurence responded to the incident, but the officers did not provide him with any medical assistance.  Doc. 1 at 7; Doc. 41-16 at 9–11; Doc. 50-1 at 8; Doc. 51 at 7.  Plaintiff alleges he never received any medical attention at Smith State Prison and that he was transferred to Johnson State Prison the next morning so he would not report the assault.[3]  Doc. 1 at 9; Doc. 41-16 at 11; Doc. 50-1 at 3; Doc. 51 at 7.

---

[3]   Plaintiff remained at Johnson State Prison for several months after the alleged assault but is currently incarcerated at Telfair State Prison.

Defendants, in their Motion, dispute whether these officers could have even been involved in these events.[4] Defendants acknowledge Defendant Hudson was, at one time, an officer at Smith State Prison but contend Hudson stopped working with the Georgia Department of Corrections ("GDC") in March 2017—nearly a year before the alleged incident. Docs. 1, 19, 32; Doc. 41-12 at 1–2. Plaintiff does not dispute this fact generally but alleges Hudson would occasionally work at Smith State Prison as a "temp." Doc. 51 at 3. Additionally, Defendants contend there were no CERT officers at Smith State Prison in March 2018 by the name of Laurence or Mobley (or alternative spellings).

Defendant Williams was the Warden of Smith State Prison in March 2018. Doc. 41-1 at 1. Defendants contend there is no evidence of any communication between Defendant Williams and other Defendants prior to Plaintiff's transfer or any evidence Williams had any notice of Plaintiff's medical issues. Id. at 2–3. Defendant Caldwell was the Warden at Johnson State Prison from March 2018 through October 2018. Id. at 1. Defendants contend Caldwell learned of Plaintiff's medical issues through a grievance submitted in September 2018, and Plaintiff received medical treatment for those issues at Johnson State Prison after that grievance was filed. Id. at 2–3.

There is a grievance process at both Smith State Prison and Johnson State Prison that is applicable to and utilized for all inmates at GDC. Doc 41-3 at 1, Doc. 41-8 at 1. The GDC's general grievance policies are set out in Standard Operating Procedure ("SOP") Policy Number 227.02 ("Statewide Grievance Procedure"). Doc. 41-3 at 2; Doc. 41-4; Doc. 41-8 at 2; Doc. 41-9. The Statewide Grievance Procedure contains the procedures inmates must follow to effectively exhaust their administrative remedies. Doc. 41-3 at 2; Doc. 41-4; Doc. 41-8. Under

---

[4] These disputes are not germane to the Court's failure-to-exhaust analysis. Rather, the Court summarizes the disputes for context.

5

the Statewide Grievance Procedure, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" which "affects the offender personally" and which is not explicitly listed in the SOP as a "non-grievable issue." Doc. 41-4 at 4.

The grievance process includes two steps inmates must follow. At Step One, they must submit an original grievance, and then, inmates must submit a Central Office Appeal at Step Two. Doc. 41-3 at 3; Doc. 41-4 at 7; Doc. 41-8 at 3. While housing transfers are generally not grievable, an inmate may submit a grievance regarding any alleged retaliation, regardless of the form. Doc. 41-3 at 3; Doc. 41-4 at 5; Doc. 41-8 at 3.

Grievances submitted by an inmate are reflected in an inmate's Grievance History. Doc. 41-3 at 4; Doc. 41-8 at 4. Plaintiff's Grievance History shows he submitted a grievance numbered 266366 on April 24, 2018, alleging use of force by John Doe. Doc. 41-3 at 4–5; Doc. 41-5; Doc. 41-6; Doc. 41-8 at 4–5. Grievance Number 266366 makes no reference to an alleged retaliatory transfer or failure to render medical aid. See Doc. 41-6. Plaintiff never submitted a grievance for the alleged retaliatory transfer or lack of medical care at Smith State Prison. Doc. 50-1 at 4–5; Doc. 51 at 6.

Plaintiff also submitted Grievance Number 275437 on September 26, 2018—approximately six months after his transfer from Smith State Prison to Johnson State Prison—related to his attempts to seek medical treatment for a head injury arising from the March 26, 2018 incident. Doc. 41-8 at 4–5; Doc. 41-10; Doc. 41-11 at 3. This grievance was partially granted. Warden Caldwell signed the response on October 29, 2018, and Plaintiff signed to acknowledge receipt of the response on November 19, 2018. Doc. 41-11 at 1–2. Notably, Plaintiff did not wait for a response to Grievance Number 275437 before filing this suit on October 19, 2018. Doc. 1 at 17–18.

6

# DISCUSSION

## I. Plaintiff's Failure to Exhaust

Defendants argue Plaintiff's Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to suing Defendants, as required by the Prison Litigation Reform Act ("PLRA"). Doc. 41-2 at 6–10. Defendants argue Plaintiff failed to file a grievance for the alleged retaliatory transfer by Defendants Williams, Hudson, or Laurence, Plaintiff never filed a grievance as to his alleged deliberate indifference claim against Defendants Hudson and Williams, and Plaintiff did not exhaust the grievance process prior to filing this suit against Defendant Caldwell seeking injunctive relief. Id.

### A. PLRA's Exhaustion Requirements

Under the PLRA, an incarcerated individual must properly exhaust all available administrative remedies—the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances. Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into

7

account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement). Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim. Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules. Woodford, 548 U.S. at 91–92; Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))). "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this suit." (quoting Higginbottom, 223 F.3d at 1261)). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the

8

administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

B.     **Standard of Review for Exhaustion**

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner, 541 F.3d at 1082.

While exhaustion is a mandatory requirement for bringing suit, one exception exists. Ross, 136 S. Ct. at 1858 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 1856; Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded that "an inmate is required to exhaust . . . only those[] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 136 S. Ct. at 1858–59; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A

remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Secondly, exhaustion is not required when an administrative procedure that is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 136 S. Ct. at 1859–60. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 1860; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[] an inmate to grieve a breakdown in the grievance process.'" (quoting Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082.

First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero, 2018 WL 3861351, at *1. This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley I, 802 F.3d at 1209); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 2018 WL 3861351, at *1 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant, 530 F.3d at 1376); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376 ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.")).

### C. Applying <u>Turner</u>

Defendants argue Plaintiff's Complaint should be dismissed because Plaintiff failed to exhaust his administrative remedies prior to suing Defendants, as required by the PLRA. Doc. 41-2 at 6–10; Doc. 53 at 4–5. Defendants contend Plaintiff failed to file any grievance related to the alleged retaliatory transfer by Defendants Williams, Hudson, or Laurence or the alleged deliberate indifference by Defendants Hudson and Williams. Additionally, Defendants aver Plaintiff did not exhaust his administrative remedies regarding his claim for injunctive relief against Defendant Caldwell because he filed suit before receiving a response to his grievance.

#### 1. *GDC grievance policy.*

There is a grievance process at both Smith State Prison and Johnson State Prison that is applicable to and utilized for all inmates at GDC. Doc 41-3 at 1; Doc. 41-8 at 1. The GDC's general grievance policies are set out in SOP Policy Number 227.02 ("Statewide Grievance Procedure"). Doc. 41-3 at 2; Doc. 41-4; Doc. 41-8 at 2; Doc. 41-9. The Statewide Grievance Procedure contains the procedures inmates must follow to effectively exhaust their administrative remedies. Doc. 41-3 at 2; Doc. 41-4; Doc. 41-8. Under the Statewide Grievance Procedure, inmates may "file a grievance about any condition, policy, procedure, or action or lack thereof" which "affects the offender personally" and which is not explicitly listed in the SOP as a "non-grievable issue." Doc. 41-4 at 4.

The grievance process includes two steps that inmates must follow. At Step One, they must submit an original grievance, and then, inmates must submit a Central Office Appeal at Step Two. Doc. 41-3 at 3; Doc. 41-4 at 7; Doc. 41-8 at 3. A grievance alleging an officer used force not in compliance with GDC policies is closed at the original grievance level and forwarded for investigation without the need for appeal. Doc. 41-3 at 3; Doc. 41-4 at 10;

Doc. 41-8 at 3. While housing transfers are generally not grievable, an inmate may submit a grievance regarding any alleged relation, regardless of the form. Doc. 41-3 at 3; Doc. 41-4 at 5; Doc. 41-8 at 3.

### 2. *Plaintiff failed to exhaust his administrative remedies.*

Defendants argue Plaintiff never filed a grievance against Defendants related to his retaliation claim or his deliberate indifference to a serious medical need claims prior to bringing suit. Doc. 41-2 at 6. Instead, Defendants assert Plaintiff only exhausted his administrative remedies by filing a grievance against former Defendant John Doe for an alleged excessive force claim before brining suit. Id. at 8; Doc. 41-11 at 3. Defendants further contend, while Plaintiff submitted a grievance related to his head injuries, that only dealt with his lack of care at Johnson State Prison, which is not at issue in this suit, and moreover, he filed this suit before receiving a reply to that grievance. Doc. 41-8 at 5; Doc. 41-11 at 1, 3.

Plaintiff does not dispute he did not file a grievance related to his retaliation claims against Defendants Williams, Hudson, and Laurence or related to his deliberate indifference claims against Defendants Williams and Hudson. See Doc. 50 at 8; Doc. 51 at 6. Instead, Plaintiff contends his failure to exhaust his administrative remedies should be excused because the grievance process would not offer him a remedy regarding retaliation or "no remedy existed under the prison grievance procedure that would resolve what had occurred." Doc. 50 at 8; Doc. 51 at 6.

Similarly, Plaintiff does not dispute he did not wait for a response to his grievance for medical care before filing his suit, which includes claim for injunctive relief in the form of prospective medical care against Defendant Caldwell. Indeed, in Plaintiff's Response to Defendants' SMF, he states "no response" is required to the portion of Defendants' SMF related

13

to whether Plaintiff exhausted the grievance process as it relates to his claim for injunctive relief against Defendant Caldwell.  Doc. 51 at 6.

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.  Plaintiff's allegations and Defendants' allegations regarding his grievance do not conflict.  Indeed, Plaintiff admits he has not filed grievances relating to his claims for retaliatory transfer or deliberate indifference to serious medical needs because he thought doing so would not remedy his issues and would be futile.  Doc. 50 at 8; Doc. 50-1 at 4–5; Doc. 51 at 6.  However, Plaintiff's mere belief filing a grievance would be futile does not excuse the exhaustion requirement.  Higginbottom, 223 F.3d at 1261 (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement); see also Simpson v. Allen, No. 6:15-cv-118, 2016 WL 5024226, at *7 (S.D. Ga. Sept. 16, 2016) ("Plaintiff could not simply disregard the grievance process and then argue, after the fact, that if he had filed a grievance, it would have been rejected.").  Thus, Plaintiff failed to exhaust available administrative remedies as to his claims for retaliatory transfer and deliberate indifference.

Likewise, Plaintiff failed to properly exhaust his administrative grievances before bringing a claim against Defendant Caldwell for injunctive relief.  While Plaintiff filed a grievance seeking medical care, he did not properly exhaust because he did not wait for the response to the grievance—which partially granted the grievance—before filing suit.  Doc. 41-11 at 1–4; Doc. 41-16 at 12, 15–16.  Thus, because Plaintiff filed suit seeking injunctive relief against Defendant Caldwell before receiving a response to Grievance Number 275437, he failed to properly exhaust his grievance.  Bryant, 530 F.3d at 1378; Sewell, 2007 WL 201269 (finding a

plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

In sum, Plaintiff provides nothing more than conclusory arguments he should be excused from exhausting his administrative remedies in this case. Plaintiff has not shown he was misled about the grievance process, the grievance process was too complicated to be utilized, or that it operated as a dead-end or made any substantive arguments about his lack of exhaustion at all. Thus, Plaintiff failed to exhaust his administrative remedies as to the events giving rise to his Complaint under step one of Turner. See Brown, 212 F.3d at 1207 ("When a state provides a grievance procedure for its prisoners, as Georgia does here, an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.").

Consequently, the Court should **GRANT** this portion of Defendants' Motion and **DISMISS** Plaintiff's Complaint based on his failure to exhaust his administrative remedies.[5]

### III.    Dismissal for Failure to Follow This Court's Order

Because I have recommended dismissal of Plaintiff's claims against Defendants Williams, Hudson, Caldwell, and Laurence, all that remains is Plaintiff's claim for deliberate indifference to serious medical need against Defendant Mobley. However, Plaintiff's claims against Defendant Mobley are due to be dismissed for failure to follow this Court's Order and failure to prosecute.

A district court may dismiss a plaintiff's claims sua sponte pursuant to either Federal Rule of Civil Procedure 41(b) or the court's inherent authority to manage its docket. Link v.

---

[5] Because Plaintiff's claims against Defendants Williams, Hudson, Caldwell, and Laurence are due to be dismissed for failure to exhaust his administrative remedies, the undersigned declines to address Defendants' additional summary judgment arguments.

15

Wabash R.R. Co., 370 U.S. 626 (1962);[6] Coleman v. St. Lucie Cnty. Jail, 433 F. App'x 716, 718 (11th Cir. 2011) (citing Fed. R. Civ. P. 41(b) and Betty K Agencies, Ltd. v. M/V MONADA, 432 F.3d 1333, 1337 (11th Cir. 2005)).  In particular, Rule 41(b) allows for the involuntary dismissal of a plaintiff's claims where he has failed to prosecute those claims, comply with the Federal Rules of Civil Procedure or local rules, or follow a court order.  Fed. R. Civ. P. 41(b); see also Coleman, 433 F. App'x at 718; Sanders v. Barrett, No. 05-12660, 2005 WL 2640979, at *1 (11th Cir. Oct. 17, 2005) (citing Kilgo v. Ricks, 983 F.2d 189, 192 (11th Cir. 1993)); cf. Local R. 41.1(b) ("[T]he assigned Judge may, after notice to counsel of record, *sua sponte* . . . dismiss any action for want of prosecution, with or without prejudice[,] . . . [based on] willful disobedience or neglect of any order of the Court." (emphasis omitted)).  Additionally, a district court's "power to dismiss is an inherent aspect of its authority to enforce its orders and ensure prompt disposition of lawsuits."  Brown v. Tallahassee Police Dep't, 205 F. App'x 802, 802 (11th Cir. 2006) (quoting Jones v. Graham, 709 F.2d 1457, 1458 (11th Cir. 1983)).

It is true dismissal with prejudice for failure to prosecute is a "sanction . . . to be utilized only in extreme situations" and requires a court to "(1) conclud[e] a clear record of delay or willful contempt exists; and (2) mak[e] an implicit or explicit finding that lesser sanctions would not suffice."  Thomas v. Montgomery Cnty. Bd. of Educ., 170 F. App'x 623, 625–26 (11th Cir. 2006) (quoting Morewitz v. West of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.), 62 F.3d 1356, 1366 (11th Cir. 1995)); see also Taylor v. Spaziano, 251 F. App'x 616, 619 (11th Cir. 2007) (citing Morewitz, 62 F.3d at 1366).  By contrast, dismissal *without* prejudice for failure to prosecute is not an adjudication on the merits, and, therefore, courts are afforded greater

---

[6] In Wabash, the Court held a trial court may dismiss an action for failure to prosecute "even without affording notice of its intention to do so."  370 U.S. at 633.  Nonetheless, in the case at hand, the Court advised Plaintiff his failure to comply with the Court's Order could result in dismissal of his claims against Defendant Mobley for failure to follow a Court Order and failure to prosecute.  Doc. 40 at 2.

discretion in dismissing claims in this manner.  Taylor, 251 F. App'x at 619; see also Coleman, 433 F. App'x at 719; Brown, 205 F. App'x at 802–03.

While the Court exercises its discretion to dismiss cases with caution, dismissal of this action is warranted.  See Coleman, 433 F. App'x at 719 (upholding dismissal without prejudice for failure to prosecute § 1983 complaint where plaintiff did not respond to court order to supply defendant's current address for purpose of service); Taylor, 251 F. App'x at 620–21 (upholding dismissal without prejudice for failure to prosecute, because plaintiffs insisted on going forward with deficient amended complaint rather than complying or seeking an extension of time to comply with court's order to file second amended complaint); Brown, 205 F. App'x at 802–03 (upholding dismissal without prejudice for failure to prosecute § 1983 claims where plaintiff failed to follow court order to file amended complaint and court had informed plaintiff that noncompliance could lead to dismissal).

Plaintiff brought this cause of action under 42 U.S.C. § 1983, alleging Defendant Mobley was deliberately indifferent to his serious medical needs.  Doc. 1.  The Court ordered service of Plaintiff's Complaint upon Defendant Mobley and directed the United States Marshals Service to serve Defendant Mobley.  Doc. 8.  The Marshals Service signed the Return, dated January 28, 2020, with the notation: "Unexecuted-HR Smith State Prison states no such person ever employed at prison."  Doc. 11 at 2.  The Court then ordered the Marshals Service to personally serve Defendant Mobley.  Doc. 40.  The Court also directed Plaintiff provide any information he had about Defendant's whereabout to the Marshals Service or any additional, personally identifiable information for Defendant Mobley to the United States Marshals Service and this Court within 21 days of this Order.  Id. at 2.  The Court cautioned Plaintiff his failure to provide any such information would result in the recommended dismissal of his claims against Defendant

17

Mobley based on Plaintiff's failure to follow a Court Order and failure to prosecute. Id. The United States Marshals Service have stated it is unable to serve Defendant Mobley because of a lack of sufficient personally identifiable information. Doc. 54.

Plaintiff failed to respond to the Court's Order, despite having ample opportunity to do so and being forewarned of the consequences of his failure to do so, and Defendant Mobley still has not been served.[7] Thus, the Court should **DISMISS** Plaintiff's claims against Defendant Mobley for failure to prosecute and failure to follow this Court's Order. Because I have recommended dismissal of all of Plaintiff's claims, I also **RECOMMEND** the Court and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## IV.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal

---

[7]     Defendants dispute whether there was an officer by the name of Mobley employed at Smith State Prison during the relevant period. This is consistent with the United States Marshals Service return, indicating "HR Smith State Prison states no such person ever employed at prison." It may be that no such person exists, Plaintiff does not have the correct name, or that the records are deficient. The Court is not in a position to resolve this issue. Rather, Plaintiff was obligated to come forward with identifying information, as ordered, but he failed to do so.

theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' construed Motion to Dismiss and **DISMISS** Plaintiff's claims against Defendants Williams, Caldwell, Hudson, and Laurence for failure to exhaust available administrative remedies. Additionally, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendant Lt. Mobley for failure to prosecute and failure to follow Court Order. Because I have recommended dismissal of all Defendants in this action, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection that the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C);

Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 28th day of June, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA